

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Ben J. Dean
District Attorney
Breckenridge, Texas

Dear Mr. Dean:

Opinion No. 0-2906

Re: Whether or not the successor
to a defaulting Tax Assessor
— Collector may lawfully
pay out of fees earned by
such successor that part of
the salaries of the deputies
which was incurred, but not
paid, during the administra-
tion of his predecessor, and
further whether or not the
defaulting Assessor-Collector
and his bondsmen are liable
for such unpaid portion of
salaries due to deputies?

We beg to acknowledge receipt of your letter of
November 5, 1940, requesting an opinion from this depart-
ment, which letter is as follows, to-wit:

"The Stephens County Tax Assessor and Col-
lector is a fee officer in a county under
twenty thousand population. He resigned from
his office on April 25, 1940. At the time of
his resignation he was short in his accounts,
and was short in his fee account for the year
1940, $1207.69. He had paid the salaries of
his deputies up until April 15, but during the
period of April 15, 1940, to April 25, 1940,
the date said Tax Assessor and Collector re-
signed, the deputies have not been paid. Inas-
much as the collector had collected fees in ex-
cess of an amount necessary to pay the deputies
and had failed to pay them, the County takes
the position that this is a debt of the col-
lector and not of the County; whereas, the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

deputies involved take the position that the successor to the tax assessor and collector should pay the balance due on these salaries out of the fees earned subsequent to April 25, 1940, and during the year 1940, there being on hand sufficient fees for this purpose.

"The Tax Assessor and Collector, after he resigned, made his final report, but did not settle with the County, and has never settled with the County, and suit is now pending against said Tax Assessor and Collector and his bondsmen for the excess fees of office during 1940 retained by said Tax Assessor and Collector. The bond by the Tax Assessor and Collector is in statutory form.

"Article 3897 provides for the filing of an annual report showing all fees and commissions earned by the tax assessor and collector.

"Article 3896 defines the fiscal year as beginning on January 1st of each year, and provides that where an official serves a fractional part of such a year he shall nevertheless make final settlement for the portion so served and shall be entitled to the proportionate part of his compensation.

"Article 3891 provides, with reference to the disposition of the fees of office, that the tax assessor and collector shall, "out of the current fees of his office pay or be paid the amount allowed him under the provisions of Article 3883, together with the salaries of his assistants and deputies.'

"Article 3899 provides among other things with reference to the tax assessor and collector that, 'the amount of such expenses, together with the amount of salaries paid to assistants, deputies and clerks shall be paid out of the fees earned by such officer.'

"It appears from the foregoing that the Tax Assessor and Collector of Stephens County is re-

quired to pay his clerks and deputies out of the
fees earned by him and that there are no fees
earned by him with which to pay the same.

"I should like to propound the following
two questions:

"FIRST: Can the successor to the default-
ing tax assessor and collector lawfully, out of
fees earned by such successor, pay that part of
the salaries of the deputies which was incurred
and unpaid during the administration of his
predecessor in office?

"SECOND: Are the defaulting tax assessor
and collecter and his bondsmen liable for the
unpaid amount of salaries due the assessor and
collector's deputies at the time of his resigna-
tion?"

Your first question should be answered in the affirma-
tive, for the following reasons:

While deputy Assessors-Collectors are named or appoint-
ed by the Assessor-Collector, nevertheless, such deputies are
officers themselves of the county under the State, whose com-
pensation is paid out of fees earned by the Assessor-Collector's
office. Article 3891, Rev. Civ. Stat. of Tex. The status of
such a deputy is not different from what it would be if his
appointment were made directly by the Commissioners' Court of
the county rather than by the Assessor-Collector.

It is made the duty of such officer employing a
deputy to pay such deputy out of the current fees of office
the amount to which he is entitled under the provisions of
the applicable statutes. Rev. Civ. Stat., Art. 3891. It is
further provided in the Article just cited "If the current
fees of such office collected in any year be more than the
amount needed to pay the amounts above specified, same shall
be deemed excess fees, and shall be disposed of in the manner
hereinafter provided."

The obvious purpose of the Legislature was to pro-
vide a method for paying such deputies, and further to provide
that such deputy or deputies were entitled to look for payment
to the fees of office collected by their superior during the
fiscal year. This, we think, is a clear implication of the
statute.

Whether the deputy's salary is paid monthly
as it accrues, or is deferred until the end of the fis-
cal year, nevertheless, if there are fees of office
from which payment can be made, his claim is a just
one against such fees, and should be recognized and
paid therefrom.

Incumbents of an office may come and go, but
the office functions so long as there is an incumbent.

There is no reason why the deputies' salaries
should not be paid for their services duly performed out
of fees of office which you say are on hand, merely be-
cause such fees have been collected by the successor in
office to one who employed such deputy.

These conclusions find support in our Opinion
No. 0-2745 and in American Ind. Co. vs. Red River Nat'l
Bank, 132 S. W. (2) 473, where it is said:

> * * * * . Excess fees of a tax col-
> lector consist of the sum remaining in
> his hand after deducting from the total
> of all lawful fees collected by him dur-
> ing the year the following items:  (1)
> His 'maximum annual fees' as provided by
> Articles 3883 and 3883a;  (2) and his
> deputy hire as provided by Article 3891;
> and (3) his office expenses as provided
> by Article 3899; and (4) 1/4 of the re-
> mainder until such 1/4 amounts to the sums
> specified in Article 3891 dependent upon
> the population of the county. What por-
> tion, if any, of the fees lawfully retain-
> ed by the tax collector according to his
> monthly reports may become excess fees can
> not be ascertained until the end of the
> fiscal year. * * *"

Your second question likewise should be answered
in the affirmative, because, clearly, the defaulting offi-
cer to the extent that he had funds in his possession avail-
able should have paid such funds to the deputy or deputies.
In other words, a faithful discharge of his duties required

him to do that very thing, for which reason the Assessor-Collector and his bondsmen are liable for the defalcation.

The case of Maryland Casualty Co. v. State, 81 S. W. (2) 165, 107 S. W. (2) 865, supports the views we have expressed.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS-MR

APPROVED FEB 14, 1941

ATTORNEY GENERAL OF TEXAS



APPROVED OPINION COMMITTEE BY BWB CHAIRMAN